## ALCARIO SANCHEZ V. THE STATE.

No. 21932. Delivered February 11, 1942.

The opinion states the case.

*J. W. Wilson,* of Falfurrias, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for the offense of burglary of a private residence at night with the intent to commit rape. The punishment assessed is confinement in the State penitentiary for a term of five years.

It appears from the record that at the April term, 1941, of the District Court in and for Brooks County, the grand jury of said county returned an indictment against the appellant which contained four counts, the first of which charged him with burglary with intent to commit theft, the second charged him

with burglary with intent to commit rape on a female under the age of consent, the third, with burglary with intent to commit rape on a female by force, threats and fraud, and the fourth count charged him with burglary with intent to commit murder.

At the conclusion of the testimony the court submitted the case to the jury on the second count of the indictment.

The only question presented for review by the record before us is the insufficiency of the evidence to justify and sustain appellant's conviction under the second count, that being the only one upon which the case was submitted to the jury.

In order that this opinion may truly reflect the basis for our conclusion as hereinafter expressed, we will set out the salient facts established upon the trial. The record shows that Bibiano L. Cantu was the head of the family consisting of his wife, a stepson who was non compos mentis, a stepdaughter, Duvelza Garza, who was seventeen years of age, and a sister-in-law, thirty-one years of age, who was blind. Cantu owned and possessed two small houses located side by side and about five or six feet apart. In one of these houses Cantu and his wife and sister-in-law slept, and his idiotic stepson and stepdaughter slept in the other house. Cantu further testified that the idiotic boy at times would become freightened during the night and would cry and holler; that on the night in question, about 11:00 o'clock, Cantu went to the room occupied by this boy for the purpose of finding him, and while looking for the boy the appellant entered the room through a side door; that Cantu caught appellant and the two began to struggle during which they fell out of the door upon the ground. As they were scuffling Cantu's brother-in-law appeared with a stick or "billy" and struck appellant upon the head but appellant managed to extricate himself and fled.

The State offered a part of what is claimed to be the confession of the appellant alleged to have been made to the Sheriff of Brooks County on the 16th day of April, 1941. Omitting the formal parts thereof, the confession reads as follows:

"My name is Alcario Sanchez. My home is Falfurrias, Texas. My father and I live together at Falfurrias. I am 29 years old and I have lived in Falfurrias, Texas, all my life. That for some time I have been going by the house of Bibiano L. Cantu

and have noticed a girl about 17 years of age, who is the stepdaughter of Bibiano L. Cantu; she cannot hear very well but can see and talk. * * *

"On January the 14th, 1941, I went by the house where this girl lived about 11:00 o'clock in the morning; her first name is Duvelsa; I do not know her last name. * * * About 9:30 that night I went over to her house to wait for her to come out and see me; I waited out in the street in front of the house. After about an hour she had not come out so I went to the side door, on the west side of the house, * * * I knew which room she slept in but I could not see her anywhere. About that time her stepfather, Bibiano L. Cantu, grabbed me by the coat and pulled me. * * * I then placed one foot on the inside and jerked back and both he and I fell out on the ground and I started fighting him to get away from him, but before I could get away, Rafael Vela came running up with a stick, or a loaded billie, and hit me with it three times before I could finally break loose and run.

"After getting loose, I went to my home in Falfurrias and washed and cleaned up and left immediately for the Valley. After staying in the Valley for about a month, I came back to Falfurrias and gave myself up to the Brooks County Jailer, Jose Gonzales, and have remained in the Brooks County Jail, under the custody of Jessee Grimes, since that date. * * *"

Appellant offered that part of the alleged confession which was omitted by the State — (* * *) — and which is indicated by the parenthesis as follows:

"(We have had some courtship, in that she would make a sign at me during the day time, and I would know that she wanted me to come by and see her that night, as was usual after making the sign she would meet me outside of the house at night. We would always talk for a while but never had sexual intercourse.)

"(Her first name is Dubelsa, I do not know her last name); (and she gave me the usual sign with her hand and I knew to come by and see her that night.)

"(After about an hour she had not come out so I went to the side door, on the west side, of the house, which was open,

and put my head in to see if she was awake or was fixing to come out.)

"(I had both feet on the outside at the time he grabbed me.)

"(I did not have a intercourse with the girl, Dubelsa, and did not intend to have an intercourse with her, but we were sweethearts.)"

Appellant did not testify or offer any affirmative defense other than that part of the purported confession which the State declined to introduce in evidence. It appears that he and the girl were sweethearts; that she and appellant had certain signs by which she communicated to him her wish or desire for him to come to visit her; that during the day and prior to the night in question she gave him the signal as he passed by the home of Cantu to come to see her that night; that he went near the home of Cantu and sat down by the side of the road and waited for the girl to meet him there but after he had waited for an hour or more and she did not appear, he went to the room and looked in but did not see her. The State, for some reason, failed to call Duvelza Garca to deny or controvert the appellant's statement.

It seems to be an established rule in this State that before a conviction can be had for burglary with intent to commit the offense of rape, there must be evidence, not only showing the burglarious entry, but also that the party at the time he so entered had a specific intent to commit the offense of rape upon the identical female alleged in the indictment to be the intended victim. Even if it be true that appellant entered the room occupied by the idiotic boy, yet, there was no evidence to the effect that the alleged intended victim was also in the room. On the contrary, it is made to appear that she was elsewhere in another room. It is not contended that this was the room usually occupied by the alleged intended victim. In fact, the proof shows that appellant was aware of the fact that she did not occupy that room. Consequently he could not by entering that room have had the intent to have sexual intercourse with Duvelza Garza, either with or without her consent. Moreover, his alleged confession shows that he was invited to the house by Duvelza Garza and this was not denied or contradicted by her.

In the case of Allen v. State, 18 Tex. Cr. App. 120, this court, speaking through Judge Hurt, said:

"To enter the house of another without his consent at night with force or by breaking is not a felony in this state. To make such entry a felony it must be made with certain intents; that is, to commit a felony or theft. And an indictment, to be sufficient, must not only allege such entry, but must set forth the elements of the intended offense. And again, to sustain the burglary and convict for the burglary, not only the entry, as alleged, but that the defendant entered such house for the purpose and with the intent to commit the felony or theft, as alleged in the indictment, must be proven."

In the instant case, the intent, as charged in the indictment, was to rape Duvelza Garza, and this the State was required to prove. There is no fact or circumstance in this record which goes to show what his purpose was in entering the house. This intent is generally gathered from what occurred in the room at the time the burglary was being committed. What proof is there in this record showing that he intended to have carnal knowledge of Duvelza Garza, either with or without her consent? That appellant entered the house by force at night may be conceded but that he entered it for the purpose of ravishing Duvelza Garza is purely a matter of speculation. The evidence is equally as cogent to show that appellant entered the house by force with intent to commit theft as it is that he intended to commit the offense of rape. The burden was upon the State to prove beyond a reasonable doubt that appellant not only entered the house at night time but that he entered the same with the intent to ravish Duvelza Garza. The law of this State does not tolerate a presumption against one accused of crime without any basis in the evidence therefor. The State was required to show that the object of the defendant in entering the house was to commit rape, and this object had to be proved beyond a reasonable doubt. See Coleman v. State, 26 Tex. Cr. App. 252; Brown v. State, 94 Tex. Cr. R. 140; Sedgwick v. State, 123 S. W. 702; 7 Tex. Jur. p. 828, secs. 74 and 76.

Having reached the conclusion that the evidence does not support the verdict, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has

been examined by the Judges of the Court of Criminal Appeals and approved by the Court.