**Don GREER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 41811.**

Court of Criminal Appeals of Texas.

Feb. 5, 1969.

Robinson & Wilson, Abilene, for appellant.

Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ONION, Judge.

The offense is burglary with the intent to commit arson; the punishment, 3 years' confinement in the Texas Department of Corrections.

Appellant's first ground of error challenges the sufficiency of the evidence.

To constitute burglary the entry must be with the intent to commit a felony or the crime of theft. Article 1389, Vernon's Ann.P.C. The intent, therefore, is an essential element to the offense of burglary and must be proved in order to sustain a conviction for burglary. 4 Branch's Anno.P.C., 2d ed., § 2520, p. 839. Further,

the specific intent alleged must be proved beyond a reasonable doubt by facts and circumstances which lead with reasonable certainty to the conclusion sought and not left to speculation and surmise. Mitchell v. State, 33 Tex.Cr.R. 575, 28 S.W. 475; Allen v. State, 18 Tex.App. 120. It follows, therefore, that there must be evidence not only showing the burglarious entry but also that the party at the time he entered had the specific intent to commit the felony alleged in the indictment. Sanchez v. State, 143 Tex.Cr.R. 345, 158 S.W.2d 801.

■■■ The indictment in the case at bar alleges the burglary was committed with the intent "to wilfully set fire to and burn said house." The fact of breaking and entering is always strong evidence of some bad or evil intent, but we are unable to conclude that the evidence is sufficient to show that the burglary herein was committed with the intent to burn the building in question—a prefabricated metal and tin structure with a concrete floor. Even the State's theory seems to be that it was appellant's motive and intent to burn his insured automobile stored in such building and not the building itself. Unfortunately, we have not been furnished with a brief by the State filed either in the trial court or here.

Even with that issue aside, however, we would still conclude that the evidence is insufficient to show appellant's connection with the alleged offense. The complaining witness, the owner of a garage, testified that appellant left his Dodge automobile for repairs at the garage at 4 p. m. on the day preceding the break in; that subsequently he returned to the garage that evening with some other men while such witness worked on a racing car; that after drinking some beer appellant and the other men left about 9 or 9:30 p. m.; that the following morning he (the witness) discovered the overhead door of his garage had been pushed in by an object of the same width of the average automobile and that a gasoline can which had on the afternoon before contained some high test gasoline was empty. The witness further related that near appellant's stored automobile there was a large "black burned out area on the concrete" floor of the garage. Three to five feet away there was a fifty-five gallon drum of naptha. A chrome "O" was found on the ground in front of the damaged overhead door. The fibreglass racing car in the garage appeared to have been scorched and appellant's stored automobile was "sooted a little bit."

After some investigation peace officers went to the home of the appellant where they observed a 1966 red Ford station wagon in his driveway with the letters "O" and "R" missing from the front of the hood with the front bumper slightly bent at the center thereof. Obtaining a search warrant, the officers returned to appellant's driveway, took the automobile into custody and took paint samples therefrom as well as from the damaged overhead door. Such paint samples were submitted to a chemist at the Department of Public Safety who testified that after examination he found them to be "physically identical," but that there could be other paints with the same origin.

There was no witness to the alleged burglary. The appellant was not shown to be in, near or around the garage after he left with the other men at approximately 9:30 p. m. the night before. There was no evidence that the appellant was abroad that night after such time. The State further made no effort to show the ownership of the red 1966 Ford station wagon[1] which supposedly was the instrumentality with which the burglary was committed or to demonstrate that appellant rode in, drove or exercised any control over the particular automobile from which the paint samples were taken or was even seen in or near such vehicle. The only evidence of-

1. This was true despite the fact that a picture of said automobile introduced in evidence clearly reflected a Texas registration.

fered was that the station wagon was in the appellant's driveway the morning the alleged burglary was reported and was still there later when the search warrant was executed.

Further, it is observed that there was no showing that the 1965 Dodge Dart shown to be insured was the same Dodge Dart left at the garage by the appellant.[2] The owner of the garage testified he did not know "exactly the year of it" (the automobile) and his later testimony on the subject was clearly inconclusive.[3]

■ There was no evidence that appellant owned only one Dodge Dart nor was there any evidence of appellant's financial condition at the time. The "black burned out area on the concrete" which did not burn the concrete itself was not examined by any expert. It was just assumed by the witnesses to have been caused by the gasoline being ignited.

■ "In criminal cases, a conviction may properly be had on circumstantial evidence alone. Indeed, circumstantial evidence is frequently just as convincing in a criminal case as direct evidence. To sustain a conviction on circumstantial evidence, however, the basic facts from which it is sought to infer the ultimate fact of guilt must be proved beyond a reasonable doubt by direct evidence. The basic facts must also be consistent not only with each other, but also with the ultimate fact of guilt sought to be inferred from the basic facts. In short, the circumstances relied on, when considered as a whole, must be of a conclusive nature; they must lead to a satisfactory conclusion that the accused is guilty and exclude all other reasonable hypothesis except guilt. They must produce, in net effect, a reasonable and moral certainty that the accused and no other person committed the offense charged. 24 Tex.Jur.2d, Evidence, § 729, p. 403.

"In criminal cases, a judgment of conviction, to be sustained on appeal must be supported by evidence that produces a moral certainty of the guilt of the accused to the exclusion of every reasonable doubt. The evidence will be insufficient to sustain the conviction where, although not leaving the accused free from suspicion of guilt, it still fails to show his guilt to a moral certainty, so as to exclude all reasonable doubt.

"In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review the evidence in light of the presumption that the accused is innocent. The court will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged." 24 Tex. Jur.2d, Evidence, § 742, p. 422.

Therefore, for the error observed the judgment must be reversed.

We further express grave doubts as to the sufficiency of the affidavit for the search warrant which Officer Neal secured before taking into custody the Ford automobile. Such affidavit for a search warrant was sworn to before the district attorney in and for Brown County prior to being presented to the justice of the peace who issued the said warrant.

"Q. You wouldn't remember if there was?
"A. I believe I would.
"Q. All right. What about the next stall, what vehicles were in that?
"A. In the stall marked with the 'X' there was a Dodge Dart, probably a 1964 model Dodge Dart."

---

2. The value of the automobile insured was not shown nor was the insurance policy introduced. There was testimony that the loss-payee clause of the policy was in favor of Universal C.I.T., but the respective interests of such company and appellant were not revealed.

3. "Q. Was there a 1954 Dodge in there?
"A. No, there wasn't.

■ It is well established that an affidavit or complaint for a search warrant must be made before an officer authorized to take the same before a search warrant may issue. Vaughn v. State, 146 Tex.Cr.R. 586, 177 S.W.2d 59; 51 Tex. Jur.2d, Searches and Seizures, § 24, p. 697. See also Wheeler v. State, 172 Tex.Cr.R. 21, 353 S.W.2d 463.

There appears to be a serious question as to whether the district attorney had authority to administer the oath to the officer making the affidavit for the search warrant.

Article 26, Vernon's Ann.Civ.St., denominates those officers who are generally authorized by law to administer oaths and affirmations. Such statute does not enumerate either a county or a district attorney.

The only authority for a county or district attorney to administer oaths appears to be proscribed by Articles 2.04, 2.05, 2.06 and 21.22, Vernon's Ann.C.C.P. These articles limit the authority to taking complaints charging an accused with a criminal offense.

In Williams v. State, 50 Tex.Cr.R. 269, 96 S.W. 47, in discussing the forerunners of the above mentioned statutes, this Court said: "So far as we have been able to determine from the statute, this is the extent of the authority of that officer to administer oaths."

There a perjury conviction was reversed because of the county attorney's lack of authority to administer an oath to a witness in a gambling inquiry. Cf. Rambo v. State, 43 Tex.Cr.R. 271, 64 S.W. 1039.

In 1949 the Attorney General of Texas in Opinion V–770 held that a county attorney may not in his official capacity administer an oath of one charging that a person is of unsound mind (essentially a civil procedure).

In Thomas v. State, 37 Tex.Cr.R. 142, 38 S.W. 1011, it was even held that a county attorney may not take an oath charging a criminal offense if the offense is alleged to have occurred outside of his county.

In 1 Branch's Anno.P.C., 2nd ed., § 497, p. 484, it is stated:

"The authority of the district, county or city attorney to administer oaths or to take a complaint or affidavit is limited to the particular authority conferred by statute and does not extend to cases or matters in which no express authority is so conferred."

■ In view of the legislative limitation upon the authority of the district or county attorney to administer oaths, it would *not* appear that a sworn affidavit or complaint for a search warrant falls within the authority granted. Cf. Articles 18.01, 18.05 and 18.07, V.A.C.C.P. There appears to be little logic to such limitation but this is a legislative decision and not a judicial one.

■ It is observed that while county or district attorneys may have limited statutory authority to administer oaths in their official capacity, there would appear to be no prohibition against such officials qualifying as a notary public and administering oaths in that capacity. Figures v. State, Tex.Civ.App., 99 S.W. 412; 47 Tex. Jur.2d, Public Officers, § 27, p. 41; Attorney General's Opinion, O–4228; Attorney General's Opinion V–770.

In view of our holding that the evidence is insufficient to sustain the conviction, we do not deem it essential to discuss appellant's other ground of error that the affidavit for a search warrant, even if properly sworn to, fails to comply with the holding of the United States Supreme Court in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.

The judgment is reversed and the cause remanded.

DOUGLAS, J., not participating.