Opinion filed November 8, 2007











 
 
  
 
 







 
 
  
 
 




Opinion filed November 8,
2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00189-CR

                                                     __________

 

                                       PHILLIP
CORTEZ, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                             On Appeal
from the 42nd District Court

 

                                                            Taylor
County, Texas

 

                                                    Trial
Court Cause No. 22,052-A

 



 

                                                                   O
P I N I O N      








Phillip
Cortez appeals his convictions by a jury of the offenses of burglary of a
habitation, attempted aggravated sexual assault of a child, and indecency with
a child.  For burglary, the trial court assessed his punishment at life
imprisonment in the Texas Department of Criminal Justice, Institutional
Division; for attempted aggravated sexual assault of a child, the court
assessed his punishment at imprisonment for twenty years; and for indecency
with a child, the court assessed his punishment at imprisonment for ten years. 
All of the sentences are to run concurrently.  Cortez contends in five issues
that the evidence is legally and factually insufficient to support both his
conviction of burglary of a habitation and his conviction of attempted
aggravated sexual assault of D.H. and that the trial court erred in submitting
to the jury in its charge on guilt/innocence both the offense of attempted
aggravated sexual assault of a child and the offense of indecency with a
child.  We vacate Cortez=s
conviction and sentence for the offense of indecency with a child and affirm
the judgment with respect to his convictions and sentences for burglary of a
habitation and attempted aggravated sexual assault of a child.  

Cortez
contends in issues one and two that the evidence is legally and factually
insufficient to support his conviction of burglary of a habitation with the
intent to kidnap D.H.  In order to determine if the evidence is legally
sufficient, the appellate court reviews all of the evidence in the light most
favorable to the verdict and determines whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt.
Jackson v. Virginia, 443 U.S. 307 (1979).  To determine if the evidence
is factually sufficient, the appellate court reviews all of the evidence in a
neutral light.  Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006) (overruling in part Zuniga v. State, 144 S.W.3d 477 (Tex. Crim.
App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex. Crim. App.
2000); Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing
court determines whether the evidence supporting the verdict is so weak that
the verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence. Watson,
204 S.W.3d at 414-15; Johnson, 23 S.W.3d at 10-11.

In
a burglary case, the State must prove the intent to commit a felony B in this case the intent to
kidnap D.H.  The intent to commit that felony must exist at the time of and
accompany the entry into the house.  Conrad v. State, 230 S.W.2d 225,
226 (Tex. Crim. App. 1950).  The specific intent alleged must be proved beyond
a reasonable doubt by facts and circumstances that led with reasonable
certainty to the conclusion sought and not left to speculation or surmise.  Greer
v. State, 437 S.W.2d 558, 559 (Tex. Crim. App. 1969).  If the intent relied
upon by the State is formed after the entry, the crime of burglary has not been
shown.  Conrad, 230 S.W.2d at 226.  Intent, however, may be inferred
from the surrounding circumstances.  LaPoint v. State, 750 S.W.2d 180,
182 (Tex. Crim. App. 1986).








The
indictment alleged that Cortez intentionally and knowingly entered a habitation
without the effective consent of the owner with the intent to kidnap D.H. 
Ismael Jaimes, employed in the K-9 Unit of the Abilene Police Department,
testified that he received a call concerning a kidnapping about 1:03 a.m., just
as he was arriving home after work.  He said he arrived on the scene in about
two or three minutes.  He indicated that, while talking to some kids who were
walking in the neighborhood, a Hispanic male came running up to him breathing
hard.  He stated that the man told him that he had just seen a person throw
what looked like a doll in a tall grassy area.  Officer Jaimes testified that
Cortez was the man who gave him this information.  He related that Cortez
appeared very nervous and scared.  He indicated that Cortez was the only other
person he saw.  He said Cortez told him that he was too scared to go over to
the grassy area to see if it was a girl.  According to Officer Jaimes, Cortez
told him he was just there being dropped off by a family member and that he was
going inside the house to go to sleep.

            Officer
Jaimes testified that he found a girl with half of her face dug into the ground
and with her behind up in the air.  He indicated the grass was tall.  He stated
that she was wearing a pink shirt that was pulled up around her neck.  He said
he thought she had been put in that position because her knees were put
underneath her.  He related that she was wearing nothing on the lower portion
of her body.

Officer
Jaimes testified that the child was not able to move.  He indicated that, based
on his observations, the child would not have been able to position herself the
way she was.  He stated that he covered the girl up with a blanket and picked
her up.  He indicated that Cortez did not assist him in helping D.H.








At
that point, Officer Jaimes approached Cortez believing that Cortez had more
information to give than what he had given.  He indicated that Cortez talked to
Detective Thomas Valdez.  Officer James stated that, in addition to being
really nervous, Cortez was Akind
of hesitant@ to go
with the officer and asked him if he had to.  When Cortez was placed under arrest
as a suspect in the kidnapping, police discovered that he was in possession of
marihuana.  Officer Jaimes testified that Cortez gave a description of a
suspect and a direction of where the suspect went.  He indicated that, if the
suspect had gone through the yards described by Cortez, the dogs would have
picked up a track.  He said that neither of the two dogs working in the area
could locate a path other than that of Cortez.  Officer Jaimes said that, when
Cortez gave a description of the suspect, it appeared that he was describing
himself.

Ann
Hudson testified that she was the mother of D.H., age ten, and two other
children.  She indicated that, as a result of D.H. having shaken baby syndrome,
D.H. has severe needs.  She said that D.H. wore a diaper, was fed through a
feeding tube, and did not walk or talk.  She stated that on the occasion in
question she put D.H. to bed around 9:00 p.m.  She related that D.H. would have
been on a pallet in the living room with her brother and sister sleeping on the
couch.  According to Hudson, D.H. was wearing a pink shirt, some light pink
sweat pants, a bib, socks, and a diaper.  Hudson insisted that D.H. was not
able to take her clothes off herself.

Hudson
testified that, when she awoke during the night, she could hear what sounded
like the backdoor screen scraping the concrete and could hear some dogs barking
in the back.  She indicated that, when she got up and looked out the window,
she could see a shadow of a person running down the alley.  She confirmed that
nothing or no one was missing other than D.H.            Hudson testified that
she had seen Athis man@ in her neighborhood
several times before.  She indicated that on many occasions D.H. was with her. 
She acknowledged that she could not recognize the person she saw leaving out of
her back fence on the occasion in question.  She said that, when she discovered
D.H. was missing, she made a very quick call to her mother and then called
911.  She confirmed that she did not give Cortez permission to enter her home
or take her daughter. 








Officer
Cody Josselet of the Abilene Police Department identified several photographs
that he took at the scene.  Detective Valdez, also with the Abilene Police
Department, testified that he is assigned to the Criminal Investigation
Division Crimes Against Children Unit.  He said that Cortez signed a statement
at about 4:45 a.m. in which he told of seeing someone in the area and telling
the officer that there was something on the side of the house.  In the
statement, Cortez indicated this all happened about 11:00 p.m.  Detective
Valdez said that he was able to confirm that a statement Cortez made about
being dropped off was not accurate.  He related that, in a second statement,
signed at 6:47 a.m., Cortez indicated that he was in the backyard of his
brother=s house when
he saw the backdoor of the Hudson home open.  He stated that he was going to
just look in and see if he saw anything interesting to take.  He said that,
upon seeing a little girl and thinking that her parents were not at home, he
picked her up and took her from her residence.  He insisted that he did not
know why he took D.H. out of the house, that he did not hurt her, and that he
did not molest her.  He also said he did not realize her clothes had come off
until he set her on the ground.  Detective Valdez indicated that D.H. was found
near the house of Cortez=s
grandmother.   

Detective
Valdez testified that Cortez signed a final statement at 7:21 a.m.  In this
statement, Cortez acknowledged that he took D.H.=s
pants off her and that when he did so he had thoughts of having sex with her. 
Cortez indicated that he took that thought out of his mind.  He said he never
touched her privates or exposed his penis to her.

We
hold that the evidence is legally and factually sufficient to support Cortez=s conviction of burglary of
a habitation with the intent to kidnap D.H.  Cortez contends that no rational
trier of fact could have found beyond a reasonable doubt that, at the time he
entered the Hudson residence, he did so with the intent to kidnap D.H.  He relies
upon the cases of LaPoint, 750 S.W.2d at 182; Greer, 437 S.W.2d
at 559-60; Conrad, 230 S.W.2d at 226; Kimberlin v. State, 877
S.W.2d 828 (Tex. App.CFort
Worth 1994, pet. ref=d);
and Coleman v. State, 832 S.W.2d 409, 413 (Tex. App.CHouston [1st Dist.] 1992,
pet. ref=d).         

All
of these cases are distinguishable.  In Conrad, the defendant was charged
with burglary with the intent to rape.  Conrad, 230 S.W.2d at 226.  The
State relied upon the defendant=s
confession, which indicated that he entered the residence with the intent to
commit theft and did not form the intent to rape until after he had entered.  Id. 
The court held that the evidence was insufficient to support a finding that
the defendant had the intent to rape at the time he entered the premises
because the statement relied upon by the State showed that the intent to rape
was formed after entry and there was no testimony contradicting that
exculpatory evidence.  Id. at 226-27.  








We
first note that, in this case, the felony was the intent to kidnap, not rape. 
That being the case, Cortez=s
statement that indicated that he went into the house to see if he saw anything
interesting to take was not clearly exculpatory because he could have been
referring to D.H. as something interesting to take.  Even if the statement were
exculpatory, the court=s
opinion in Conrad appears to have been based on the common-law voucher
rule.  That rule was premised upon the notion that a party may not impeach its
own witness because the party vouches for the credibility of the witness
called.  Russeau v. State, 785 S.W.2d 387, 390 (Tex. Crim. App. 1990). 
The common-law voucher rule was rejected by the enactment of Tex. R. Evid. 607.  Id.  Consequently,
the State is not bound by exculpatory statements that previously fell under the
voucher rule.  Id.  Because this case arose after the enactment of Rule
607, we decline to apply the common-law voucher rule or to rely on Conrad.  

Cortez
appears to rely on LaPoint only for general principles because the case
does not involve a question of the sufficiency of the evidence.  LaPoint,
750 S.W.2d at 180.  We do not find those general principles to be in conflict
with this opinion.  In Greer, the court held that the evidence was
insufficient to show that the defendant, at the time he entered a building,
intended to willfully set fire to and burn a house where the building was a
prefabricated metal and tin structure with a concrete floor and where the State=s theory was that it was
the defendant=s intent
to burn his insured automobile located within the building.  Greer, 437
S.W.2d at 559.  We do not find Greer to be inconsistent with this
opinion.  

In
Coleman, the court held that the evidence was sufficient to support the
defendant=s conviction
for burglary with intent to commit aggravated assault despite the State=s introduction of his
statement that showed that his intent upon entering his wife=s residence was rescue but
that he committed the assault after finding her in bed with a drug dealer.  Coleman,
832 S.W.2d at 410, 412-14.  The court, noting that the common-law voucher rule
had been abrogated by the adoption of  Rule 607, held that the jury could
choose to disbelieve the defendant=s
statement about his intent upon entering his wife=s
residence.  Id. at 414.  Coleman supports and is not in conflict
with our opinion.  Kimberlin did not involve a question relating to the
sufficiency of the evidence to support the underlying felony in a burglary
case.  We, therefore, do not consider this authority helpful in resolving the
issue before us.  We find nothing in that opinion that is in conflict with this
opinion.  We overrule issues one and two.  








Cortez
asserts in issues three and four that the evidence is legally and factually
insufficient to support his conviction for the attempted aggravated sexual
assault of D.H.  He suggests that the evidence does not show that he committed
any act that amounted to more than mere preparation that tended but failed to
effect the commission of the offense.  We hold that the evidence that Cortez
kidnapped D.H., removed her clothing, and placed her in the position in which
she was found constituted acts that amounted to more than mere preparation that
tended but failed to effect the commission of the offense of aggravated sexual
assault.  The primary cases relied upon by Cortez are all cases in which the
evidence was held to be sufficient to support a conviction.  See Alexander
v. State, Nos. 05-04-01537-CR & 05-04-01538-CR, 2006 WL 14269 (Tex.
App.CDallas, Jan. 4,
2006, pet. ref=d) (not
designated for publication); Mendez v. State, No. 05-03-01710-CR, 2004
WL 1738889 (Tex. App.CDallas,
Aug. 4, 2004, no pet.) (not designated for publication); Lindsey v. State,
764 S.W.2d 376 (Tex. App.CTexarkana
1989, no pet.).  We have examined each of these cases and are of the opinion
that none is in conflict with our conclusion that the evidence in this case is
legally and factually sufficient to support Cortez=s conviction for attempted aggravated sexual
assault of a child.  We overrule issues three and four.  








Cortez
insists in issue five that the trial court erred in submitting to the jury in
its charge on guilt/innocence both the offense of attempted aggravated sexual
assault and the offense of indecency with a child.  In the application
paragraph of the court=s
charge on guilt/innocence relating to the offense of attempted aggravated
sexual assault, the court instructed the jury that, should it find that Cortez
pulled down D.H.=s
pants with the specific intent to commit aggravated sexual assault of a child
and that act amounted to more than mere preparation that tended but failed to
effect the commission of the offense of aggravated sexual assault of a child,
it was to find Cortez guilty of attempted aggravated sexual assault of a
child.  In the application paragraph of the court=s
charge on guilt/innocence relating to the offense of indecency with a child,
the court instructed the jury that, if it found that Cortez caused D.H. to
expose her genitals to him with the intent to arouse and gratify his sexual
desire, it was to find him guilty of the offense of indecency with a child. 
Cortez suggests that, because the underlying alleged conduct in both paragraphs
is his removal of some of D.H.=s
clothing, the inclusion of both paragraphs subjected him to punishment twice
for the same conduct in violation of jeopardy provisions contained in U.S. Const. amend. V and Tex. Const. art. I, ' 14.              Because
Cortez made a timely objection to the jury charge asserting a double jeopardy
violation, we must determine whether the charge was in error and, if so,
whether the error was calculated to injure the rights of appellant.  Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  Where the same act
or transaction constitutes a violation of two distinct statutory provisions,
the test to be applied to determine whether there are two offenses or only one
is whether each provision requires proof of a fact that the other does not.  Blockburger
v. United States, 284 U.S. 299, 304 (1932).  Under the facts of this case,
proof of the attempted aggravated sexual assault of D.H., a child, by pulling
down her pants required proof of a fact that the offense of indecency with a
child did not require including the specific intent to commit the aggravated
sexual assault of D.H.  However, proof of indecency with a child by exposing
D.H.=s genitals did
not require proof of a fact that the other did not.  Consequently, there was
only one offense.  Therefore, the trial court erred in submitting a charge
allowing Cortez=s
conviction of both offenses.  Because Cortez was convicted of both offenses,
the error was calculated to injure his rights.  While the State asserts that
the trial court did not err in submitting the charge, it does not make any
argument that the offense of indecency with a child by exposing D.H.=s genitals required proof
of a fact that the attempted aggravated sexual assault charge did not.  The
proper remedy for the trial court=s
error is to vacate the lesser conviction and sentence.  McIntire v. State,
698 S.W.2d 652, 655-56 (Tex. Crim. App. 1985).  We sustain issue five.

We
vacate Cortez=s
conviction and sentence for the offense of indecency with a child and affirm
the judgment with respect to his convictions and sentences for burglary of a
habitation and attempted aggravated sexual assault of a child.  

 

PER CURIAM

November 8, 2007

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  McCall, J.,

Strange, J., and Hill, J.[1]










[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth sitting by assignment.