

## NUMBER 13-07-00027-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**SANTOS FRIAS, JR.,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the 377th District Court of Victoria County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Chief Justice Valdez**

Appellant, Santos Frias Jr. appeals his conviction for burglary of a habitation with intent to assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 2003). A grand jury indicted Frias for entering the residence of Rosalinda Contreras, his wife, without Contreras's consent and with intent to assault. A jury convicted Frias and sentenced him to seventy-five years in prison. By two issues, Frias contends that the evidence is legally and factually insufficient to support the jury's verdict. We affirm.

# I. BACKGROUND

The underlying conviction stems from an altercation Frias had with Contreras on November 11, 2004. On that date at 4 a.m., Frias banged on Contreras's apartment door and asked to be let in. Contreras repeatedly refused to allow Frias into the apartment and told him to go away, but Frias forcibly entered by kicking in the door. According to Contreras's testimony at trial, she called 911 from her cell phone before Frias gained entry. When Frias found her in the bedroom, he said "you fucking bitch, you called the police on me." He then threatened to kill her, and jumped on top of her in an aggressive attempt to get the cell phone. Contreras testified that Frias's action caused her bodily injury. Contreras also testified that Frias jumped off her and fled when he heard a car approach. As Frias fled, Officer Karl Brune entered the apartment and found Contreras upset, crying, and laying on the bedroom mattress. Officer Brune pursued Frias, but Frias escaped.

After the incident, Contreras filed a police report, which Officer Brune took. According to the report, Contreras failed to specifically allege the death threats. Instead, Contreras stated in the report that "[she was] very much afraid [Frias] was going to kill her." Officer Brune testified that he neither witnessed any assaultive behavior when he arrived at the scene nor noticed any bruising on Contreras when she filed the report.

Contreras testified that in the six months before the incident she and Frias argued every day and Frias physically abused her more than ten times. Contreras also testified about three particular incidents that occurred shortly before November 11, 2004.

Contreras testified that on October 26, 2004 Frias began hitting her after she refused to give him money that had been set aside to pay bills. The day after, Contreras requested and was granted a protective order by a justice court with the assistance of Lilly

Elizondo, an employee at a women's shelter. Elizondo testified that she remembered Contreras having a swollen face the day she requested the protective order.

The following two incidents that Contreras testified about occurred in November. According to Contreras, on November 6, 2004 Frias continually called her while she was at work in a jealous attempt to ensure she was working. When Contreras arrived home after work, Frias was at the apartment and called Contreras a liar and "a bitch" in front of her twenty-year-old son. Contreras testified that Frias then pushed her and her son out of the apartment and into the hallway along with all their possessions. She claimed that when Frias threw her out into the hallway, he left a bruise on her arm that lasted between three weeks and a month. Contreras subsequently regained access to the apartment after police arrived and arrested Frias. She called the police again on November 10, 2004 when Frias arrived at the apartment and asked to speak with Contreras. Contreras refused to speak with Frias and he left before the police arrived.

Frias was indicted for burglary of a habitation with intent to assault. A jury found him guilty and sentenced him to seventy-five years in prison. This appeal ensued.

## II. DISCUSSION

In his first and second issues, Frias contends that the evidence was legally and factually insufficient to support his conviction. Specifically, Frias contends that the State failed to prove beyond a reasonable doubt that he intended to assault Contreras when he forcibly entered her residence.

### A. Standards of Review

A legal sufficiency challenge requires the reviewing court to review all relevant evidence in a light most favorable to the verdict and determine whether any rational fact-finder could have found the essential elements of a crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The critical inquiry is not to determine whether a jury has been properly instructed because the sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge for the case. *Jackson,* 443 U.S. at 318; *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Under this standard of review, a reviewing court is not permitted to "disregard, realign, or weigh evidence." *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Therefore, the fact-finder is the exclusive judge of witness credibility. *Id*.

A factual sufficiency challenge requires a reviewing court to objectively and neutrally view all the evidence and reverse a verdict of guilty only when the evidence is so weak as to make the verdict clearly wrong and manifestly unjust, or when the verdict contradicts the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Although a reviewing court is authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, the court's evaluation should not substantially intrude upon the jury's role as the exclusive judge of witness credibility. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).

## B.    Applicable Law

To establish Frias committed the crime, the State must prove beyond a reasonable doubt that Frias, without the effective consent of the owner, entered a habitation with the intent to commit assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 2006). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2003). Intent is an essential element of the offense of burglary and must be proved by the State beyond a reasonable

4

doubt; it may not be left simply to speculation and surmise. *Greer v.* State, 437 S.W.2d 558, 559-60 (Tex. Crim. App. 1969). Intent can be inferred from the acts, words, and conduct of the accused. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). Furthermore, the fact-finder may rely on circumstantial evidence to determine intent. *LaPont v. State*, 750 S.W.2d 180, 181 (Tex. Crim. App. 1986).

Frias contends that the State failed to provide both legally and factually sufficient evidence to establish his intent to commit assault beyond a reasonable doubt. We now examine these issues in turn.

1.      *Issue 1: Challenge to the Legal Sufficiency of the Evidence*

First, Frias contends there was legally insufficient evidence that he intended to assault Contreras when he entered the residence. Frias argues that he did not become enraged or intend to assault Contreras until he learned of her call to the police, thereby demonstrating he did not possess the requisite intent when he first entered the residence. Frias also contends the conflicting testimony regarding his threats to Contreras and her injuries demonstrate the failure of the State to prove beyond a reasonable doubt that he entered the apartment with the intent to assault Contreras.

When viewing the evidence in the light most favorable to the verdict, the jury could have reasonably assumed that Frias's aggressive conduct of kicking down the door at 4 a.m. demonstrated his intent to assault. Contreras's testimony of previous incidents of abuse, accompanied by Elizondo's testimony of Contreras's swollen face, also provide circumstantial evidence indicating Frias's assaultive conduct.[1] *See McGee v. State*, 923 S.W.2d 605, 608 (Tex. App.–Houston [1st Dist.] 1995, no pet.) (providing that the fact-

[1] At trial, Frias did not object to Elizondo's and Contreras's testimony about prior alleged assaults that Frias made against Contreras. Additionally, on appeal, Frias does not contend that the trial court erred in admitting the aforementioned testimony.

finder may consider the defendant's conduct and surrounding circumstances and events in deciding the issue of intent).

Second, Frias's attempt to point to the conflicting testimony regarding whether his jumping on Contreras caused bodily injury is equally unavailing. Assault is not only defined as intentionally causing bodily injury, but also "intentionally . . . causing physical contact with another when the person knows or should reasonably believe that the actor will regard the contact as offensive or provocative." *See* Tex. PENAL CODE ANN. § 22.01 (Vernon 2003). The past history of abuse, protective order, and Contreras's repeated reluctance to allow Frias to enter the residence demonstrate that Frias should reasonably have believed that the physical contact caused by intentionally jumping on Contreras would be regarded as offensive. Whether Frias's intentional contact caused Contreras's bodily injury, as evidenced by bruises, or merely constituted offensive physical contact is immaterial because the alleged conduct constitutes an assault.

Contreras's testimony presented sufficient evidence of all the elements of burglary of a habitation, including ample circumstantial evidence of Frias's intent to assault, to allow a rational fact-finder to determine that the elements had been proven beyond a reasonable doubt. Therefore, the evidence was legally sufficient to support the jury's verdict. *Jackson*, 443 U.S. at 319. Frias's first issue is overruled.

*2.  Issue 2:  Challenge to the Factual Sufficiency of the Evidence*

Frias argues the evidence that he intended to assault Contreras when he entered the apartment was factually insufficient to support the jury verdict. An objective review of all of the evidence in a neutral light reveals some evidence that is contrary to the verdict. The evidence included Officer Brune's failure to notice a bruise on Contreras, and

Contreras failure to specifically mention the threats she alleged were made by Frias in the police report.

However, we must consider the evidence presented as a whole. The fact-finder was presented with two potential versions of the incident. In one version, the jury could disbelieve Contreras's testimony by wholly relying on the police report and Officer Brune's failure to view Contreras's bruise. Alternatively, the jury could convict Frias by believing Elizondo's testimony about Contreras's condition when she meet with her, and Contreras's testimony that Frias forcibly entered the residence, threatened her, and assaulted her.

After viewing the evidence as a whole, the contrary evidence is not so strong as to make the verdict clearly wrong and manifestly unjust, nor does the verdict contradict the great weight and preponderance of the available evidence. *Johnson v. State*, 23 S.W. 3d 1, 11 (Tex. Crim. App. 2000). Therefore, the evidence is factually sufficient to support the jury's verdict. Frias's second issue is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

_____

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 26th day of June, 2008.

_____

7