IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,010






TRACY BEATTY, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL FROM


CAUSE NO. 241-0978-04 IN THE 241ST COURT


SMITH COUNTY





 Johnson, J., filed a dissenting opinion in which Price and Holcomb, JJ.,
joined.


D I S S E N T I N G O P I N I O N



 The indictment in this case contains eight paragraphs that allege that appellant killed Click
in the course of committing or attempting to commit robbery or burglary using various means of
death. Tex. Penal Code § 19.03(a)(2). (1) The judgment indicates that the jury found appellant guilty
of killing Click in the course of committing burglary. The jury charge at the guilt phase states that
"a person commits the offense of burglary of a habitation if, without the effective consent of the
owner thereof, he enters a habitation with intent to commit a felony, theft, or an assault." Tex.
Penal Code § 30.02(a)(1).

 The burglary statute requires entry into a habitation to be without consent of the owner and,
as plead in this case, with the intent to commit a felony, theft, or assault. Tex. Penal Code
§30.02(a)(1). The evidence of entry without consent in this case is thin, and the evidence of intent
to commit a felony, theft, or assault even thinner. There is no doubt that appellant killed Click; the
issue is whether the burglary was proven and thus whether the offense is capital murder or murder. 
 Various witnesses testified to the stormy nature of the relationship between Click and
appellant. Those who knew them were all well aware of the constant fighting and assaults that had
occurred at some undetermined time more than six years in the past, but there was no testimony at
trial from any of the people who saw Click almost every day that they had ever seen bruises or
lacerations or any other physical injury that might indicate a recent physical assault by appellant. 
There was only testimony that Click and appellant argued a lot and loudly.

 There was also ample evidence of appellant's ever-changing story about how Click died, but
no matter what the crime, the perpetrator is quite likely to lie about the circumstances in an effort
to avoid the consequences of the act. A changing story does not prove lack of consent to enter nor
entry with the intent to commit a felony, theft, or assault. 

 The evidence can support a finding that appellant killed Click after her 4:00 p.m.
conversation with McCarty and before he appeared at his cousin's house between 5:00 and 5:30 p.m. 
The evidence can also support a finding that appellant killed Click after leaving Wilkerson's house
at 10:00 p.m. Regardless of the time of the crime, McCarty testified that Click told her that Click
"had asked [appellant] to leave that day." That statement can be interpreted to mean that, on
November 25, she asked appellant to leave or that, on November 25, she told appellant to leave that
very day. This ambiguity produces a question of whether any entry by appellant was "without
consent of the owner."

 McCarty was the only witness to testify that, on November 25, Click had told appellant to
leave her home, and she could not say at what time Click told appellant to leave or when he was to
depart-it could have been that day, or within a few days, or when he had other living arrangements. 
Wilkerson testified that Click and appellant argued "every day," that Click had told appellant to
move out before, and that each time she allowed him to stay or allowed him to move back in after
a short time. Wilkerson also testified that appellant often came to her house after an argument with
Click, who she agreed was a controlling person. She asked appellant to house-sit for her while she
was gone for five or six days early in November and testified that the offer was not made for the
protection of her home, but because she was worried by the constant arguing between Click and
appellant and wanted to give appellant a place to go after an argument with Click. Click was very
angry with Wilkerson for giving appellant somewhere else to live and, even though they had long
been close friends, did not speak civilly to Wilkerson after that time. Given that testimony, a rational
jury could not find, beyond a reasonable doubt, that Click had withdrawn her consent for appellant
to enter her home. 

 If the murder occurred shortly after Click's conversation with McCarty at 4:00 p.m., the
evidence supports a finding that appellant was in or near the home, as he appeared at his cousin's
house, a 45-minute drive, between 60 and 90 minutes later, driving Click's car. His cousin did not
ask about his use of Click's car, as she did not know that Click did not permit appellant to drive it
and thus had no reason to ask where Click was. 

 If the murder occurred after 10:00 p.m., when he returned to Click's home after having dinner
with Wilkerson, the only testimony about that time span was from Wilkerson, who testified that
appellant had later told her that, when "he went directly across the street to [Click's] house . . . she
was waiting for him, and that when he came through the door, they had a terrible fight." There was
no testimony that appellant told Wilkerson that he was going over there to assault Click or steal her
property nor any testimony from any other witness that he entered Click's home on November 25
with the intent to commit a felony, theft, or assault. There was only testimony about past arguments
and assaults and past expressions of appellant's desire to "choke her and shut her up." There was
only speculation about his thoughts as he returned to Click's home. A rational jury cannot find intent
based solely on speculation.


Intent, as an essential element of the offense of burglary, must be proved by the State
beyond a reasonable doubt; it may not be left simply to speculation and surmise.
Greer v. State, 437 S.W.2d 558, 559-60 (Tex. Crim. App. 1969). To find that
burglary has been committed there must be evidence not only showing burglarious
entry but also that the party at the time he entered had specific intent to commit theft
or a felony as alleged in the burglary indictment. Greer, supra, at p. 560. Nothing in
our burglary statutes or other statutes indicates that a presumption from the evidence
arises with regard to proof of intent as an essential element of burglary. 


LaPoint v. State, 750 S.W.2d 180, 182 (Tex. Crim. App. 1986). 

 It could be argued that appellant's behavior after the murder, such as using her credit card
and giving away many of her belongings, supported commission of theft, but again, there was no
evidence of his intent at the time of entry. (2) "The intent with which entrance was made is an essential
element of the offense of burglary and therefore must be pled and proved." Pinkerton v. State, 660
S.W.2d 58, 61 (Tex. Crim. App. 1983).

 The state amply proved murder, but I do not think that it proved, beyond a reasonable doubt,

lack of consent to enter or entry with the intent to commit a felony, theft, or assault. Therefore, I
would reform the judgment to reflect a conviction for murder and remand the cause to the trial court
for a new sentencing hearing. I respectfully dissent.


Filed: March 11, 2009

Do not publish 
1. It also contains a paragraph that alleges the use of a deadly weapon and two enhancements paragraphs. 
2. If the jury charge had used Tex. Penal Code § 30.02(a)(3), intent at the time of entry would not be an
issue; we have said that, pursuant to that subsection, intent to commit a felony, theft, or assault can form after entry. 
Rivera v. State, 808 S.W.2d 80, 92 (Tex. Crim. App. 1991)("The State need neither plead nor prove a burglar's
intent to commit a felony or theft upon entry under (a)(3) of V.T.C.A Penal Code 30.02.").