

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-75,010

**TRACY BEATTY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON DIRECT APPEAL FROM
### CAUSE NO. 241-0978-04 IN THE 241ST COURT
### SMITH COUNTY

JOHNSON, J., filed a dissenting opinion in which PRICE and HOLCOMB, JJ., joined.

## DISSENTING OPINION

The indictment in this case contains eight paragraphs that allege that appellant killed Click in the course of committing or attempting to commit robbery or burglary using various means of death. TEX. PENAL CODE § 19.03(a)(2).[1] The judgment indicates that the jury found appellant guilty of killing Click in the course of committing burglary. The jury charge at the guilt phase states that "a person commits the offense of burglary of a habitation if, without the effective consent of the

---

[1] It also contains a paragraph that alleges the use of a deadly weapon and two enhancements paragraphs.

owner thereof, he enters a habitation with intent to commit a felony, theft, or an assault." TEX. PENAL CODE § 30.02(a)(1).

The burglary statute requires entry into a habitation to be without consent of the owner and, as plead in this case, with the intent to commit a felony, theft, or assault. TEX. PENAL CODE §30.02(a)(1). The evidence of entry without consent in this case is thin, and the evidence of intent to commit a felony, theft, or assault even thinner. There is no doubt that appellant killed Click; the issue is whether the burglary was proven and thus whether the offense is capital murder or murder.

Various witnesses testified to the stormy nature of the relationship between Click and appellant. Those who knew them were all well aware of the constant fighting and assaults that had occurred at some undetermined time more than six years in the past, but there was no testimony at trial from any of the people who saw Click almost every day that they had ever seen bruises or lacerations or any other physical injury that might indicate a recent physical assault by appellant. There was only testimony that Click and appellant argued a lot and loudly.

There was also ample evidence of appellant's ever-changing story about how Click died, but no matter what the crime, the perpetrator is quite likely to lie about the circumstances in an effort to avoid the consequences of the act. A changing story does not prove lack of consent to enter nor entry with the intent to commit a felony, theft, or assault.

The evidence can support a finding that appellant killed Click after her 4:00 p.m. conversation with McCarty and before he appeared at his cousin's house between 5:00 and 5:30 p.m. The evidence can also support a finding that appellant killed Click after leaving Wilkerson's house at 10:00 p.m. Regardless of the time of the crime, McCarty testified that Click told her that Click "had asked [appellant] to leave that day." That statement can be interpreted to mean that, on

November 25, she asked appellant to leave or that, on November 25, she told appellant to leave that very day. This ambiguity produces a question of whether any entry by appellant was "without consent of the owner."

McCarty was the only witness to testify that, on November 25, Click had told appellant to leave her home, and she could not say at what time Click told appellant to leave or when he was to depart–it could have been that day, or within a few days, or when he had other living arrangements. Wilkerson testified that Click and appellant argued "every day," that Click had told appellant to move out before, and that each time she allowed him to stay or allowed him to move back in after a short time. Wilkerson also testified that appellant often came to her house after an argument with Click, who she agreed was a controlling person. She asked appellant to house-sit for her while she was gone for five or six days early in November and testified that the offer was not made for the protection of her home, but because she was worried by the constant arguing between Click and appellant and wanted to give appellant a place to go after an argument with Click. Click was very angry with Wilkerson for giving appellant somewhere else to live and, even though they had long been close friends, did not speak civilly to Wilkerson after that time. Given that testimony, a rational jury could not find, beyond a reasonable doubt, that Click had withdrawn her consent for appellant to enter her home.

If the murder occurred shortly after Click's conversation with McCarty at 4:00 p.m., the evidence supports a finding that appellant was in or near the home, as he appeared at his cousin's house, a 45-minute drive, between 60 and 90 minutes later, driving Click's car. His cousin did not ask about his use of Click's car, as she did not know that Click did not permit appellant to drive it and thus had no reason to ask where Click was.

If the murder occurred after 10:00 p.m., when he returned to Click's home after having dinner with Wilkerson, the only testimony about that time span was from Wilkerson, who testified that appellant had later told her that, when "he went directly across the street to [Click's] house . . . she was waiting for him, and that when he came through the door, they had a terrible fight." There was no testimony that appellant told Wilkerson that he was going over there to assault Click or steal her property nor any testimony from any other witness that he entered Click's home on November 25 with the intent to commit a felony, theft, or assault. There was only testimony about past arguments and assaults and past expressions of appellant's desire to "choke her and shut her up." There was only speculation about his thoughts as he returned to Click's home. A rational jury cannot find intent based solely on speculation.

> Intent, as an essential element of the offense of burglary, must be proved by the State beyond a reasonable doubt; it may not be left simply to speculation and surmise. *Greer v. State*, 437 S.W.2d 558, 559-60 (Tex. Crim. App. 1969). To find that burglary has been committed there must be evidence not only showing burglarious entry but also that the party at the time he entered had specific intent to commit theft or a felony as alleged in the burglary indictment. *Greer*, *supra*, at p. 560. Nothing in our burglary statutes or other statutes indicates that a presumption from the evidence arises with regard to proof of intent as an essential element of burglary.

*LaPoint v. State*, 750 S.W.2d 180, 182 (Tex. Crim. App. 1986).

It could be argued that appellant's behavior after the murder, such as using her credit card and giving away many of her belongings, supported commission of theft, but again, there was no evidence of his intent at the time of entry.[2] "The intent with which entrance was made is an essential element of the offense of burglary and therefore must be pled and proved." *Pinkerton v. State*, 660

---

[2] If the jury charge had used TEX. PENAL CODE § 30.02(a)(3), intent at the time of entry would not be an issue; we have said that, pursuant to that subsection, intent to commit a felony, theft, or assault can form after entry. *Rivera v. State*, 808 S.W.2d 80, 92 (Tex. Crim. App. 1991)("The State need neither plead nor prove a burglar's intent to commit a felony or theft upon entry under (a)(3) of V.T.C.A Penal Code 30.02.").

S.W.2d 58, 61 (Tex. Crim. App. 1983).

The state amply proved murder, but I do not think that it proved, beyond a reasonable doubt, lack of consent to enter or entry with the intent to commit a felony, theft, or assault. Therefore, I would reform the judgment to reflect a conviction for murder and remand the cause to the trial court for a new sentencing hearing. I respectfully dissent.

Filed: March 11, 2009
Do not publish