Bennie Edward CLARK, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 52007.

Court of Criminal Appeals of Texas.

Nov. 10, 1976.

Richard M. Price, Abilene, for appellant.

Ed Paynter, Dist. Atty., Abilene, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for burglary of a building in which punishment was assessed at confinement in the Texas Department of Corrections for four (4) years.

In two grounds of error appellant attacks the sufficiency of the evidence to show an entry into a building and to show an intent to commit theft.

The record reflects that on December 7, 1974, at 4:45 a. m., a silent alarm signal was received at the home of Mrs. Hudgens of the Abilene Burglar Alarm Company from the premises of the Corley-Wetsel Truck Company. After waiting thirty seconds to see if a report of an accidental set-off would be called in, Mrs. Hudgens called the police dispatcher and reported the alarm. Officer Garland Wade of the Abilene Police

Department was refueling his patrol unit at the city barn located within 700–1,000 feet of the Corley-Wetsel Truck Company when he received the dispatch. The time was approximately 4:45 a. m. It took one minute to arrive at the premises of the truck company following the 30 second dispatch. Arriving from the west on East Highway 80, he drove his unit to the front of the leasing office and main building, looking for broken windows or open doors. While driving along the side of the building on his first circle he heard a whistle, though he could not tell where it came from. After getting out of his car to check a door, he returned to his patrol unit and continued circling the building. On arriving again at the east side of the building, the officer saw another patrol car which had stopped a "chevy" pickup on the premises. This pickup had no lights on and was carrying the appellant in the passenger side. Officer Wade testified that on his first time around the north side of the building this pickup was not in view. He also added: "There's no way that any vehicle could have come in here because I was at this location twice, and with it headed back this way. All of this took place in a matter of a minute and a half, or maybe two minutes."

The second patrol unit which stopped the pickup was carrying Officers Jimmy Seals and Eldred Carter of the Abilene Police Department. They also had responded to the dispatch announcement of the burglar alarm at the Corley-Wetsel Truck Company. Officer Seals testified that it took about three minutes to reach the Corley-Wetsel Truck Company lot, traveling south on Judge Ely Boulevard. On turning into the back of the lot, the officers saw a white over brown pickup at the rear of the building traveling on the lot in an easterly direction at approximately five miles per hour with its headlights off. The truck did not have license plates or an inspection sticker on it. The officers pulled in front of this truck, blocking its exit and stopping it. Officer Carter noted that the two men in the pickup seemed nervous. The officers found in the back of the pickup truck a hacksaw and new bolt cutter with price tag still attached, though it had been used as it was chipped.

The third policeman to arrive was Clyde Watson. In the course of further investigation D. E. Corley, co-owner of the Corley-Wetsel Truck Company, was contacted and arrived at the truck lot. Corley testified that there were two vans which had the wheels removed and were upon wooden blocks[1] located at the back of the main buildings on the rear of the lot. One of these vans contained spare parts while the other held tires, tire tubes and antifreeze. This second van, referred to as the "tire van," held an inventory of approximately $10,000 value. Corley said that the vans had been padlocked at the close of business on the afternoon of December 6, 1974. However, the officers and Corley found that the padlocks to both vans were missing and the doors to the tire van were open, although the parts van door was still closed. The padlocks were never located.

Corley and Officer Watson gave testimony relating to the discovery of metal particles under the position in which the locks had been on that afternoon. Further testimony was given by Corley and Mrs. Donnie Hudgens that the opening of the door to the van would set off the burglar alarm system.

In examining the tire storage van, Corley found nothing missing. However, he did find inside the van some chewed wooden matches which he said had not been in the van when it was locked on the afternoon of December 6. Officer Watson identified these matches as five in number. Watson also found four chewed wooden matches inside the cab area of the pickup truck in which appellant was seated when stopped. Officer Watson added that while talking to appellant's companion that night the man was chewing on matches similar to the sam-

1. V.T.C.A., Penal Code, § 30.01(2) provides:
   " 'Building' means any enclosed structure intended for use or occupation as a habita-tion or for some purpose of trade, manufacture, ornament, or use."

ples found in the storage van and in the cab of the pickup.

Officer Watson also found a tie tack and backing on the ground ten feet south of the storage trailer. Appellant was wearing a black western hat on the night of the burglary which had two holes in the center and top. In comparing the tie tack and backing to the holes in the hat, Officer Watson found that the tie tack fit the holes.

In presenting its evidence, the defense called the appellant to the stand. He testified that he owned a truck which was in Fort Worth but that the engine and tires had been stolen from it. While drinking beer at a tavern in Fort Worth on the night of December 6th with Derrell Leonard King, the two decided to drive to the Corley-Wetsel Truck Company in Abilene to look for his motor. His testimony was that they had just pulled in with their headlights on when they were passed by the first patrol car and then stopped by the second patrol car. On cross-examination the appellant admitted that he needed "a lot of parts" for his truck. The appellant also admitted convictions for misdemeanor theft and burglary.

■ Appellant first contends that the evidence failed to show an entry had been made. When the sufficiency of the evidence is challenged, this court is required to view the evidence in the light most favorable to the verdict. *Morgan v. State,* 503 S.W.2d 770 (Tex.Cr.App.1974); *Resendez v. State,* 495 S.W.2d 934 (Tex.Cr.App.1973).

V.T.C.A., Penal Code, § 30.02, defining burglary also provides:

"(b) For purposes of this section, 'enter' means to intrude:

"(1) any part of the body; or

"(2) any physical object connected with the body."

■ Burglarious entry may be shown by circumstantial evidence, *Jones v. State,* 458 S.W.2d 89 (Tex.Cr.App.1970); *Morgan v. State,* supra. Here, the evidence shows the vans in question were locked and secured at 6 p.m. on December 6, 1974, by the witness Corley. There were no matches

therein at the time. In the early morning hours of December 7, the appellant and his companion King were discovered on the premises driving in a truck with its lights off. The padlocks on the vans were missing and there were metal flakes beneath the position they had been in which indicated the locks had been cut. There was evidence that the burglar alarm would go off when the doors to the van or vans were opened. Such an alarm was reported and shortly thereafter appellant and his companion were apprehended. Inside one van were five chewed matches. Similar matches were in the pickup truck in which appellant was riding. His companion King was observed chewing on similar matches while conversing with Officer Watson. The apparently new bolt cutter in the pickup truck had been chipped.

■ The jury was charged on the law of circumstantial evidence and the law relating to parties to an offense and criminal responsibility. An individual may be guilty of burglary even though he did not personally enter the burglarized premises if he is acting together with another in the commission of the offense. *Smith v. State,* 496 S.W.2d 564 (Tex.Cr.App.1973).

We conclude the evidence is sufficient to warrant a jury finding that there was a burglarious entry.

The instant case is distinguishable from *Tanner v. State,* 473 S.W.2d 936 (Tex.Cr. App.1971), relied upon by the appellant because there is more than mere setting off a burglar alarm to infer entry. Reliance upon *Stone v. State,* 396 S.W.2d 882 (Tex. Cr.App.1965), is also misplaced as there was no evidence of entry in that case other than a showing that a screwdriver in the defendant's possession fit marks on a door facing which was never shown to have been opened.

■ Appellant also contends that the evidence is insufficient to show the intent to commit theft. In addition to all of the foregoing evidence, appellant testified he had come to Abilene seeking a stolen engine and that he needed "a lot of parts" for his

truck in Fort Worth. Further, it is well settled that the act of breaking and entering a building at nighttime raises the presumption that the act was done with the intent to commit theft. *Finch v. State,* 506 S.W.2d 749 (Tex.Civ.App.1974); *Garcia v. State,* 502 S.W.2d 718 (Tex.Cr.App.1973); *Callahan v. State,* 502 S.W.2d 3 (Tex.Cr. App.1973); *Graham v. State,* 487 S.W.2d 359 (Tex.Cr.App.1972); *Roberts v. State,* 375 S.W.2d 303 (Tex.Cr.App.1964).

Appellant's contention is overruled.

The judgment is affirmed.