Opinion filed December 9,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00137-CR

                                                    __________

 

                          SABRINA GUTIERREZ PEREZ, Appellant

 

V.

 

STATE OF TEXAS, Appellee



 

                                   On
Appeal from the 118th District Court

 

                                                          Howard
County, Texas

 

                                                      Trial
Court Cause No. 12462

 



 

M
E M O R A N D U M   O P I N I O N

The jury found
Sabrina Gutierrez Perez guilty of burglary of a habitation and assessed her punishment
at nine years confinement and a fine of $1,000.   We affirm.

I.  Background
Facts

Perez
and Enrique Alvarez were staying with Alvarez’s sister, Gloria Alvarez, at
Northcrest Apartments in Big Spring.  Perez and Alvarez were romantically
involved, and Perez was pregnant.  Gloria testified that one evening Perez and Alvarez
had been drinking and were not in the apartment when she went to sleep at
around 9:00 p.m.

A
six-foot-high chain-link fence ran behind the entire length of Northcrest
Apartments. The only way to get behind the fence was to walk around either end
of the apartment complex.  The apartment complex office was at one end of the
complex, and Gloria’s apartment was somewhere in the middle.

Christina
Regan also lived at Northcrest Apartments.  A little after midnight, Regan was
walking across the parking lot when she heard a loud noise.  Another resident
grabbed Regan’s arm and told her to come upstairs.  There, Regan looked out a
window and saw a man carrying something out of the apartment complex office,
and she called 911.  The man went around the chain-link fence behind the
office, then came back.  A little while later, a woman appeared from behind the
fence.  The woman and man talked for thirty seconds to a minute.  The man
reentered the office and carried something else out, and the man and woman left
together behind the fence.    

A
few minutes later, the police arrived and searched the field behind the fence. 
Perez and Alvarez emerged from some bushes close to the fence and fled.  Police
ordered them stop, but with no result.  When the police caught them, Alvarez
became aggressive, and a taser was used to subdue him.  Perez cursed at police,
then at Alvarez.  Soon, Perez was also detained.

Perez
and Alvarez were extremely intoxicated.  Alvarez had severe lacerations and was
covered with blood.  Perez became aggressive on the way to the police station. 
When she arrived at the station and her handcuffs were removed, she cursed at
the arresting officer and tried to head-butt him.  She had to be handcuffed
again until she calmed down.

Two
glass doors leading to the apartment complex office had been broken, probably
with a piece of bed frame.  A trail of blood led from the office around the
fence.  Behind the fence, police found computer equipment that had been taken
from the office.  The equipment was covered with blood.

            At trial, Perez emphasized that her fingerprints were not
found on the equipment or in the office and that she was not bleeding and did
not appear to have any blood on her at the time of her arrest.  Alvarez
testified for the defense.  Alvarez stated that he left Gloria’s apartment
sometime between 9:00 p.m. and 11:00 p.m.  At that time, Perez was already in
bed.  He claimed that Perez was not involved in the burglary and that she appeared
at the scene only after he had broken into the office and started removing
equipment.  He testified that Perez yelled at him to stop.  He further claimed
that Perez did not flee from police.  Before Perez’s trial, Alvarez had
been convicted of the same burglary.

II. 
Issues

            In
her first two issues, Perez argues that the evidence was legally and factually
insufficient to support her conviction as a party to the offense of burglary.  In
her third issue, she contends that the trial court abused its discretion in not
having reread all of the testimony requested by the jury during deliberations.

III. 
Was the Evidence Sufficient to Support Conviction?

Perez
first argues that the evidence was legally and factually insufficient to
support her conviction as a party to the offense of burglary.  The Texas Court
of Criminal Appeals, however, recently held that legal sufficiency is the only
standard that a reviewing court should apply.  Brooks
v. State, No. PD-0210-09, 2010 WL 3894613,
at *1 (Tex. Crim. App. Oct. 6, 2010).  To determine whether evidence is legally
sufficient, we review all of the evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307 (1979).  The factfinder is the sole judge of the
credibility of the witnesses and the weight to be given their testimony.  Adelman
v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992).  The factfinder may
choose to believe or disbelieve all or any part of any witness’s testimony.  Sharp v.
State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).   

A person commits burglary if, without the effective consent
of the owner, the person enters a habitation or a building not then open to the
public, with the intent to commit a felony, theft, or assault.  Tex. Penal Code Ann. § 30.02(a)(1)
(Vernon 2003).  A person commits theft if he appropriates property of another
without the owner’s effective consent and with the intent to deprive the owner
of the property.  Id. § 31.03(a), (b) (Pamph. Supp. 2010).  

A person is criminally responsible as a party to an offense
if the offense is committed by his own conduct, by the conduct of another for
which he is criminally responsible, or by both.  Id. § 7.01(a) (Vernon
2003).  A person is criminally responsible for an offense committed by the
conduct of another if, acting with intent to promote or assist the commission
of the offense, he solicits, directs, aids, or attempts to aid the other person
to commit the offense.  Id. § 7.02(a)(2).  Each party to an offense may
be charged with the commission of the offense.  Id. § 7.01(b).   

To determine whether the accused participated as a party,
the court may look to events occurring before, during, and after the commission
of the offense and may rely on the defendant’s actions that show an
understanding and common design to do the prohibited act.  Ransom, v. State,
920 S.W.2d 288, 302 (Tex. Crim. App. 1994).  An individual may be guilty of
burglary even though she does not personally enter the burglarized premises if
she is acting together with another in the commission of the offense.  Clark
v. State, 543 S.W.2d 125, 127 (Tex. Crim. App. 1976).  Circumstantial
evidence may be used to prove party status.  Ransom, 920 S.W.2d at 302. 
While the mere presence of the accused at the scene is not alone sufficient to
support conviction, it is a circumstance tending to prove guilt, which combined
with other facts may suffice to show that the accused was a party to the
crime.  Valdez v. State, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981). 
Likewise, while flight alone will not support a guilty verdict, evidence of
flight from a crime scene is a circumstance from which an inference of guilt
may be drawn.  Id.  In a circumstantial evidence case, it is unnecessary
for every fact to point directly and independently to the guilt of the accused;
rather, it is enough if the finding of guilt is warranted by the cumulative
force of all incriminating evidence.  Johnson v. State, 871 S.W.2d 183,
186 (Tex. Crim. App. 1993).  

The
State offered evidence showing that someone broke into the apartment complex
office, removed computer equipment, and took the equipment behind the
chain-link fence.  While the State offered no evidence that Perez entered the
office or helped to carry any of the equipment, it did provide evidence
demonstrating that Perez was a party to the burglary.

First,
the direction from which Regan testified the woman appeared tended to show
involvement with the crime.  Regan testified that the woman came from behind
the fence, talked with the man, and then left with him behind the fence.  The apartment
complex office was at one end of the complex, and Gloria’s apartment was
somewhere in the middle.  The State produced evidence showing that a person
coming from the middle of the apartment complex could only get behind the fence
by walking to either end of the complex.  For instance, Alvarez testified that,
to commit the burglary, he walked from Gloria’s apartment to the office down
the sidewalk bordering the parking lot.  Thus, he did not approach the office
from behind the fence.

Second,
when the police arrived, they saw Perez and Alvarez fleeing across the field
behind the fence.  When the officers caught and detained them, the two were uncooperative
and aggressive.  Alvarez told the police that he and Perez were coming from the
same place.  In the field, police found computer equipment taken from the
office.

Third,
the manager of the apartment complex testified that, before the burglary, Alvarez
had never been inside the office.  Perez, however, had been inside to pick up
an application for an apartment.

Fourth,
Perez was in a relationship with Alvarez, she and Alvarez were staying at
Gloria’s apartment, and Alvarez was convicted of the same burglary.

Viewing
this evidence in the light most favorable to the verdict, a rational trier of
fact could have found beyond a reasonable doubt that Perez was guilty of
burglary under the law of parties.  See Powell v. State, 194 S.W.3d 503,
507-08 (Tex. Crim. App. 2006) (holding that, even in the absence of evidence
that the accused ever entered complainant’s house, evidence was legally
sufficient to support conviction as a party to burglary when the accused was
present outside complainant’s house, left the crime scene after verbally
abusing complainant, was seen changing shirts with another man on the sidewalk
near the crime scene, and was in possession of material linking him to a person
who had pleaded guilty to the same burglary).  Therefore, Perez’s first two issues
are overruled.

IV.  Did the Trial
Court Abuse its Discretion By Not Reading to the Jury 

All of the
Requested Testimony?

 

            Perez
next argues that the trial court abused its discretion by not having all
disputed testimony reread to the jury.

During
deliberations, the jury requested that an answer from Gloria’s testimony be
reread to them.  The trial court ascertained that the jury was in dispute as to
whether Gloria testified that Perez and Alvarez were at her apartment when she
went to sleep.  In response, the trial court instructed the court reporter to
reread the following from Gloria’s testimony:  

            Q:  But
when you went to bed that night, were they there?

 

            A: 
No, sir.

 

On
appeal, Perez contends that the trial court erred in not having the court
reporter reread two other portions of Gloria’s testimony that Perez claims
addressed the same question:  

            Q:  When
you went to bed, would you say that they were sober, or could you say how much
--?

 

            A:  They
were already feeling good.  They were already drinking.  They were already
feeling good.  I know that part, but I don’t know.

 

            . . . .

 

            Q:  Do
you recall when you went to bed, were Mr. Alvarez and Ms. Perez -- were they
still at the apartment? 

 

            A:  No,
sir.  They were -- my husband went to go take my grandbaby to school, and he
asked me where -- “Are they in the room?” I said, “I don’t know. They should,
apparently asleep or something.”  

 

            Then, he
goes, “Go open the door.”  From the room -- my room was closed -- my door was
closed.  And I opened the door, and they weren’t there.  Both of them weren’t
there.

 

When
the jury asks that certain disputed testimony be reread, the trial court must
first determine if the jury’s inquiry is proper under Tex. Code Crim. Proc. Ann. art. 36.28 (Vernon 2006).  Brown
v. State, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994).  If it is proper, the
trial court must then interpret the communication, decide what sections of the
testimony will best answer the inquiry, and then limit the rereading
accordingly.  Id.  We do not disturb the trial court’s decision unless a
clear abuse of discretion and harm is shown.  Id.  

Complaints
about error in the reading of trial testimony must be preserved by objection at
the time of reading.  Hollins v. State, 805 S.W.2d 475, 476 (Tex. Crim.
App. 1991).  The record does not show that Perez made any objection that the
testimony reread to the jury was too limited.  Therefore, the issue has not
been preserved for appeal.  Perez’s third issue is overruled.

V.  Conclusion

The judgment of
the trial court is affirmed.  

                                                                              

            

RICK STRANGE

                                                                                    JUSTICE

 

December 9, 2010

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.