• NO. _____

In the
Texas Court of Criminal Appeals
At Austin

**NO. 05-13-01640-CR**
In the Court of Appeals for the
Fifth District of Texas
Dallas, Texas

**STEVE ACOSTA**

**Appellant,**

V.

STATE OF TEXAS

**Appellee.**

**PETITION FOR DISCRETIONARY REVIEW
OF APPELLANT STEVE ACOSTA**

RECEIVED IN
COURT OF CRIMINAL APPEALS

September 14, 2015

ABEL ACOSTA, CLERK

Bruce Kaye
TBN. 00784374
2309 Boll St.
Dallas, TX 75204
(214) 722-7438

Counsel for Appellant

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS:                                                    2

STATEMENT REGARDING ORAL ARGUMENT                                     3

STATEMENT OF THE CASE                                                 3

STATEMENT OF PROCEDURAL HISTORY                                       4

QUESTION PRESENTED FOR REVIEW                                         4

REASONS FOR REVIEW                                                    5


**I.    Court of Appeals Erred in finding Evidence was sufficient to f ind Appellant Guilty of Charged Offense of Burglary of a Habitation**


PRAYER FOR RELIEF                                                    15

CERTIFICATE OF SERVICE                                              16

APPENDIX (Opinion of Court of Appeals, 5th Dist.)

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested as it would not assist to resolve whether the Court of Appeals, 5th District, Dallas, Texas, ruled in error when it denied Appellant the Constitutional right to Raise Issues for First Time on Appeal.

## STATEMENT OF THE CASE

On or about June 13, 2013, Steve Acosta, hereinafter "Acosta and/or "Appellant" was indicted by the Grand Jury of Dallas County, State of Texas, duly organized at the January term, A.D., 2013, of the Criminal District Court 6, Dallas County, on the felony offense of Burglary of a Habitation, Cause No. F1355987 (Clerk's Record, P. 10).

Said Indictment also contained an enhancement paragraph for the felony offense of Aggravated Robbery with a Deadly Weapon, Cause No. F05-27389, Criminal District Court No. 5, Dallas County, Texas (*Id*).

Defendant entered a plea of not guilty to the charged offense (Burglary of a Habitation) and proceeded to trial by jury. Appellant plead notguilty.

On or about November 5, 2013, the Jury returned a verdict of GUILTY to the charged offense (Clerk's Record, P. 43). Appellant plead not true to the enhancement allegation. Thereafter, the Judge assessed

3

punishment at 12 years incarceration in the TDCJ (Clerk's Record, P. 53). Defendant filed his Notice of Appeal and Appointment of Attorney on Appeal on or about November 14, 2013 (Clerk's Record, P. 60).

## STATEMENT OF PROCECURAL HISTORY

A panel of the Fifth Court of Appeals affirmed the judgment of the trial court in a decision rendered on or about June 6, 2011. See Appendix A. Appellant did not file a motion for another rehearing. Appellant now files his petition for discretionary review pursuant to Rule 68 of the Texas Rules of Appellate Procedure.

## QUESTION PRESENTED FOR REVIEW

Whether Court of Appeals erred by rendered opinion in which it found that Appellant's conviction was based on sufficient evidence.

## REASONS FOR REVIEW

A.   The Court of Appeals has decided important questions of state and federal law in conflict with applicable decisions of the Supreme Court of the United States and the Texas Court of Criminal Appeals. Rex. R. App. P. 66.3(c).

## ARGUMENT IN SUPPORT OF REASONS FOR REIVEW

The State initiated its case in chief with its first witness, Ms. Patricia Ortega ("Ortega). Ortega lives next door to Mr. Garibaldi ("Garibaldi"), and lives two houses away from victim Mr. Depena ("Depena")(RR, V. 3, P. 15, L. 19-21). She stated she looked out her kitchen window and saw a man and a woman inside Garibaldi's home (RR, V. 3, P. 15, L. 12-15). She stated she only saw "the young man from behind, not from the front." (RR, V. 3, P. 16, L. 1-2). She stated she saw the man then go to Depena's house by removing the air conditioner (a window unit on the left hand side)(RR, V. 3, P. 16, L. 14- 18). She stated, again, that she only saw the back of the man who pushed in the air conditioning unit, and did not see his face (RR, V. 3, P. 17, L. 4-10). She stated that she saw the person who pushed in the air conditioning unit go inside Depena's house. (RR, V. 3, P. 17, L. 13-16).  She called 911 and told them that someone was going inside the house of a neighbor. (RR, V. 3, P. 17, L. 20-22).  She further stated that she did not see anyone leave Depena's house (RR, V. 3, P. 18, L. 11- 15).

5

On cross examination, Ortega stated that the male who entered Depena's house (via the space where the window air conditioner was located) was wearing a white T-Shirt (RR, V. 3, P. 20, L. 1-4). She stated that the female (whom she testified she saw with the male inside Garibaldi's house – she is the daughter of Garibaldi) was outside acting like she was working in the lawn (RR, V. 3, P. 20, L. 13- 16). Once again, Ortega confirmed that she did not ever see anyone come out of Depena's home while she waited for the police to arrive (RR, V. 3, P. 20, L. 24-25).

Next, the State called victim Juan Depena ("Depena"). Depena stated he received a phone call on May 20, 2013, at work from the police informing him his home had been burglarized (RR, V. 3, P. 27, L. 16-18). Upon arriving at his home, he noticed that the door was broken and "everything was tossed around in my house." (RR, V. 3, P. 28, L. 3-4). He continued, "everything was upside down. The clothes were thrown about. The drawers were pulled out and had been thrown on the floor. There was nothing – for example, nothing of value, everything was messed up." (RR, V. 3, P. 28, L. 22-25) He stated he noticed his 47 inch Sony television was gone (RR, V. 3, P. 29, L. 1-7).

Depena testified that items were taken from his bedroom and were now in the kitchen in black garbage bags (clothes and gifts to be mailed to Mexico – purses, shirts, pants…) (RR, V. 3, P. 29, L. 15-24, P. 30, L. 1). He also stated that other articles of home décor were also in his kitchen, which were not there before the burglary (RR, V. 3, P. 30, L.16-18). Depena concluded by stating that he did not give anyone permission to be in his home or collect items and take them or attempt to take them from his home (RR, V. 3, P. 28, L. 2-7).

On cross examination, Depena stated that he did not know who entered his home that day and also did not know how they entered his home (RR, V. 3, P. 31, L. 21-24).

The State then called Officer Christopher Klien ("Klien"), Dallas Police Department. Klient works in a covert capacity in plain clothes (RR, V. 3, P. 36, L. 8-9). He stated he received a call regarding a burglary in progress at 12:50. He further stated that from the time he received the call, he was about a minute away from the house (RR, Vol. 3, P. 38, L. 1-4).

The officer made two points clear: First, from the time he received the call – recall that Ms. Ortega called 911 when she saw the young man push in the air conditioner unit at Depena's home – the Officer arrived at Depena's in

7

about a minute. Second, he did not see anyone leave Depena's house from the time he arrived until the uniformed police showed up --15 minutes later (RR, Vol. 3, P. 38, L. 1- 4 and P. 41, L. 1-24).

Upon their arrival, the officers pushed open the front door to the home and saw Appellant standing inside Depena's home (RR, Vol. 3, P. 44, L. 21). The Officer testified the house had been ransacked and property was collected and placed in the kitchen. "We did see in the kitchen there was the A.C. unit that was in the kitchen that the caller [Ms. Ortega] had said that she observed being pushed through." (RR, Vol. 3, P. 48, L. 6-8).

Next to testify for the State was Detective Ronald Kramer ("Kramer" and/or "Detective Kramer"), who also worked undercover (like Klien). Kramer offered cumulative testimony essentially reconfirming that the 911 call came in at 12:55 and he arrived on the scene within 15 minutes (RR, Vol. 3, P. 87, L. 20-24). After arriving at Depena's home, Kramer (and Klein) maintained surveillance on the house to "make sure no one came or went" (RR, Vol. 3, P. 88, L. 10-11) until the uniformed officers arrived.

The Officer stated that the female was Melissa Garibaldi and she lived in the house next door to Depena (RR, V. 3, P. 40, L. 12-18). The Officer stated he observed the house for 15 minutes waiting for the police officers to

arrive. The Detective made it clear (just as Klein did) that no one was seen entering or leaving Depena's home when he stated:

"Nobody came or went from the residence while we were doing surveillance. There were people in the yard next door. And then two houses down which is where the caller (Ms. Ortega) lived. But there was nobody around the house (Depena)" (RR, Vol. 3, P. 89, L. 22- 25).

He stated that during the course of his investigation, he did not learn of any other individuals exiting or entering the house, and the house was covered (on the exterior) by officers (RR, Vol. 3, P. 89, L. 22-25).

Turning again to the issue of how much time passed form the initial 911 call until the officers arrived on the scene, on cross examination, the Detective (using the call sheet to refresh his memory) stated that the 911 call came in at 12:52-53 (recall this is when Ms. Ortega stated she saw Acosta pushing in the ac unit in Depena's home to enter it) and by 13:03 Acosta is taken into custody (RR, Vol. 3, P. 107 L. 1-11). Thus, a total of approximately 10 minutes passed from the original call to the arrest (*Id* at L. 18-24).

The Detective actually made the point that Appellant raised in the Argument portion of this brief that Appellant could not have been the person responsible for stealing the televisions from Depena's home as follows:

Q: Hypothetically speaking, if there were TVs in that ten minutes, assuming the person that went through the window was the person that took them, that person removed the TV from the state they were in, right?

A: That is not going to be in that ten-minute time frame. All that stuff that happened, it didn't happen in that ten-minute time frame. I will tell you that, that ten-minute time frame we are talking about, not all of that stuff could have

"Q: So ten minutes from when this person went in the window, to when you arrived is not long enough for all of that to have happened?
A: I would say that, yes"                    (RR, Vol. 3, P. 118, L. 15-18).

**A.     Court of Appeals Committed Error When it Ruled in violation of the decision of the United States Supreme Court and the Texas Court of Criminal Appeals in Holding Sufficient Evidence Exists to find Appellant Guilty.**

A person commits burglary of a habitation when the person, without the effective consent of the owner, enters a habitation with the intent to commit theft or an assault; or enters a habitation and commits or attempts to commit theft or an assault. Tex. Penal Code Ann. § 30.02(a)(1), (3) (2011). In reviewing a claim of legal insufficiency, the Court of Appeals was supposed to view all of the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *Jackson v. Va.*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Sells v. State*, 121 S.W.3d 748, 753-54 (Tex. Crim. App. 2003); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Cr. App. 2007).

10

Intent, as an essential element of the offense of burglary, must be proved by the State beyond a reasonable doubt; it may not be left simply to speculation and surmise. *Greer v. State*, 437 S.W.2d 558, 559-560 (Tex. Crim. App. 1969).

"Insufficient evidence" points may, and should, be sustained when the record discloses either of the following situations: (a) the evidence is insufficient to support a finding of a vital fact, or (2) the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. *Jackson v. Va.*, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 & n.11.

The issue in this case is whether a fact finder may reasonably infer that appellant intended to commit a felony, theft, or an assault inside the complainant's home when he entered the home through the air conditioning window unit.

In summary, Appellant allegedly pushed in the ac unit on Depena's home and within 10 minutes, was met by officers. Additionally, undercover officers arrived at the home within a minute of the call and testified that no one else had entered or left the home during the 10 minutes it took for the uniformed officers to arrive.

Nothing was reported stolen except a 47 inch television and a smaller tv unit, which the Officer attested could not have been stolen during the time frame of this situation (911 call comes in, undercover officer arrives in about a minute, no one comes into or leaves the home during the ten minutes it took for uniformed officers to arrive). Nothing else was stolen from the home. Just a ransacked home with clothing stuffed into a garbage bag located in the kitchen. The Officer confirmed that someone other than Appellant must have stolen the TV ("several trips") since there was not enough time to have done so in 10 minutes. Hence, the same person who entered the home prior to Appellant and stole the tv, was the same person who ransacked the home and put some clothes in a garbage bag and left said bag in the kitchen. There is no evidence that ties Appellant to the stolen television(s) or the ransacking of the home or the placing of clothing into a garbage bag. The sole factor that ties Appellant to this alleged offense is one simple thing: Entry into the home.

Appellant contends there is insufficient evidence that he committed burglary of a habitation because not even a modicum of evidence was presented that Appellant (who did enter the residence) ever intended to commit theft or an assault; or entered a habitation and committed or

attempted to commit theft or an assault. Tex. Penal Code Ann. § 30.02(a)(1), (3) (2011).

The nonconsensual entry of a habitation at night creates a rebuttable appellate presumption that the actor intended to commit theft (See *Mauldin v. State*, 628 S.W.2d 793, 795 (Tex. Crim. App. 1982); *Solis v. State*, 589 S.W.2d 444, 446 (Tex. Crim. App. 1979); *Moss v. State*, 574 S.W.2d 542, 544 (Tex. Crim. App. 1978); *Clark v. State*, 543 S.W.2d 125, 128 (Tex. Crim. App. 1970). *See also Williams v. State*, 506 S.W.2d 868 (Tex. Crim. App. 1974); *Clayton v. State*, 493 S.W.2d 526 (Tex. Crim. App. 1973); *Roberts v. State*, 375 S.W.2d 303 (Tex. Crim. App. 1964);). However, that presumption does not apply in this day-time event. *LaPoint v. State*, 750 S.W.2d 180, 182 (Tex. Crim. App. 1986)(emphasis added).

Intent, as an essential element of the offense of burglary, must be proved by the State beyond a reasonable doubt; it may not be left simply to speculation and surmise. *Greer v. State*, 437 S.W.2d 558, 559-560 (Tex. Crim. App. 1969). To find that burglary has been committed there must be evidence not only showing burglarious entry but also that the party at the time he entered had specific intent to commit theft or a felony as alleged in the burglary indictment. *Greer*, supra, at p. 560. Nothing in our burglary statutes or other statutes indicates that a presumption from the evidence

13

arises with regard to proof of intent as an essential element of burglary. *Mauldin v. State*, 628 S.W.2d at 795 (Tex. Crim. App. 1982); *Ortega v. State*, 626 S.W.2d 746, 749 (Tex. Crim. App. 1982); *Moss v. State*, 574 S.W.2d 542 (Tex. Crim. App. 1978); *Williams v. State*, 537 S.W.2d 936 (Tex. Crim. App. 1976); *Hawkins v. State*, 467 S.W.2d 465 (Tex. Crim. App. 1971). See also *Wilson v. State*, 658 S.W.2d 615 (Tex. Crim. App. 1983); *Goswick v. State*, 656 S.W.2d 68 (Tex. Crim. App. 1983); *Coberly v. State*, 644 S.W.2d 734 (Tex. Crim. App. 1983).

While the fact-finder's prerogative to choose among plausible and rational readings of the evidence is beyond the review of this Court, there must still be some evidence to prove the essential elements of the offense and a verdict must be supported by a reasonable inference. *Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009).

In Appellant's case, there simply is no evidence that would give rise to any reasonable inference that Appellant had the intent required to be found guilty of Burglary (versus Criminal Trespass which does not have the same *mens rea* as to intent).

The evidentiary "presumption" or permissive inference was never intended to relieve the prosecution of proving every element of a crime beyond a reasonable doubt or to be used in a jury charge for that purpose.

14

*Francis v. Franklin*, 471 U.S. 307, 105 S. Ct. 1965, 1970, 85 L. Ed. 2d 344 (1985). Appellant argues that no rational trier of fact could have found the essential element beyond a reasonable doubt. *Jackson v. Va.*, 443 U.S. at 319.; *Sells v. State*, 121 S.W.3d at 753-54 (Tex. Crim. App. 2003); *Hooper v. State*, 214 S.W.3d at 13 (Tex. Crim. App. 2007).

## PRAYER FOR RELEIF

For the reasons cited herein, Appellant respectfully prays this Court grants his Petition for Discretionary Review, and without need or oral argument, reverse the decision of the Court of Appeals and reverse the decision of the Trial Court.

Respectfully submitted,

/s/ Bruce C. Kaye
Bruce C. Kaye
TBN. 00784374
2309 Boll St.
Dallas, TX 75204
(214) 722-7438 office
(866) 649-8757 facsimile
Bruce @Brucekaye.com

Attorney for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was tendered, via email, to the Dallas County District Attorney's Office, and via Electronic Filing with the Texas Court of Criminal Appeals, on this the 8th day of September, 2015, in accordance with the Texas Rules of Appellate Procedure. A copy was also mailed out to State Prosecuting Attorney, P.O. Box 12405, Austin, TX 78711.

/s/ Bruce C. Kaye
Bruce C. Kaye

**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01640-CR

### STEVE ACOSTA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1355987-M**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

A jury convicted appellant Steve Acosta of the offense of burglary of a habitation.

Appellant pleaded not true to an enhancement alleging a prior conviction for aggravated robbery

with a deadly weapon. The court found the enhancement paragraph true and sentenced appellant

to twelve years in prison. In one issue on appeal, appellant argues that the evidence was

insufficient to support the conviction. Because the issues are settled, we issue this memorandum

opinion. TEX. R. APP. P. 47.4. We modify the trial court's judgment and affirm as modified.

### BACKGROUND

Patricia Ortega—a neighbor who lived two houses from the complainant Juan Depena—

testified that, about noon on the day of the alleged offense, she saw through her kitchen window

that there was a woman and a man in her neighbor Mr. Garibaldi's house. Garibaldi's house lay between her house and the complainant's house. She testified that he was a Hispanic man and that she saw "the young man . . . from behind, not from the front" and never saw his face. Ortega also testified that the man left Garibaldi's house, "pushed the air conditioner" unit at the complainant's window, "and went in[.]" Ortega testified that she called 911 and reported that someone had entered her neighbor's house. She also testified that she did not see anyone else enter or anyone leave the complainant's house (although she admitted on cross-examination that she was not watching consistently) and that the police arrived in about fifteen minutes.

On cross-examination, Ortega testified that the man who entered the complainant's house was wearing a long t-shirt that she thought was white. Ortega testified that the woman she saw in Garibaldi's house was the daughter of her neighbor Garibaldi and that, when the man entered the complainant's house, the woman went outside Garibaldi's house and acted like she was working in the yard. Ortega also testified that she did not know if anyone entered or exited the complainant's side door to his house because she did not have a good view of that side door.

The complainant testified that, after the police informed him by phone that his house had been burglarized, he arrived at his house and found the door broken and "everything . . . tossed around" in the house. He testified: "[E]verything was upside down. The clothes were thrown about. The drawers were pulled out and had been thrown on the floor. There was nothing—for example, nothing of value, everything was messed up." He also testified that he noticed that his forty-seven inch television set was missing and also that items were in his kitchen collected in a black garbage bag. He testified that he had not given anyone permission to be in his house or to collect and take items or attempt to take items from his house.

Dallas Police Officer Christopher Klein testified that he was about a minute away from the complainant's residence when he received a call regarding the burglary in progress. The call

–2–

relayed that a "Latin male had entered the house and there was a Latin female out front of the house." After he arrived at the house, as an undercover officer, he remained in his car parked across the street, watching the house and waiting for uniformed police officers to arrive. He testified that he could see three sides of the house and that he did not observe anyone entering or exiting the house from the time that he arrived at the scene until uniformed officers arrived within fifteen minutes. He observed a Latin female—subsequently identified as Melissa Garibaldi—in the yard next door to the complainant's house. Klein testified that, after uniformed police arrived, the officers observed that a side door of the house was open. He and two other officers "just pushed that side door open and announced Dallas Police" and "at that point" they "saw Mr. Acosta standing inside the house" in the living room. Klein identified appellant in the courtroom as the person whom he had observed in the complainant's living room when officers entered. Klein testified that appellant complied when police requested that he put up his hands and lay on the floor. He testified that the "house had been ransacked" with "property stacked by the door inside a black trash bag" in the kitchen, and "stuff all over the place" with drawers pulled out, furniture moved, and the mattress taken off the bed. He testified that officers also observed an air conditioning unit not at a window but "inside the kitchen." Klein also testified that, after the initial burglary report, the complainant stated that a couple of television sets were missing and testified that officers searched unsuccessfully for them.

On cross-examination, Klein testified that appellant was wearing a blue shirt and blue jeans and that, when appellant put up his hands upon police request, appellant "said that someone was chasing him." Klein testified that he did not see anyone else in the house and that officers did not search the area looking for the person purportedly chasing appellant. When asked if someone who was "not there" could have taken the televisions, Klein testified that "[c]ould have been." Klein also testified that he did not recover burglary tools from appellant, but that he did

not "know if [he had] ever caught anybody with screwdrivers" in the "burglary of a house" and that most burglars of houses "just kick the door in."

On redirect examination, Klein testified that appellant described the people chasing him as "[b]lack guys" but that Klein did not observe any African-American males near the house nor did the eyewitness. Klein also testified that the distance from the complainant's house to the neighbor's house could "be traveled multiple times in a period of three minutes[.]"

Detective Ronald Kramer with the Dallas Police Department testified that he arrived at the scene seconds after Klein, and he and Klein maintained surveillance of the house until uniformed officers arrived. He testified that he saw no one enter or exit the house and that, during his investigation of the burglary, he did not learn of "any other individual exiting or entering the house[.]" Kramer testified that, when police found appellant standing in the middle of the complainant's living room and identified themselves to appellant, appellant "seemed very calm, not upset" and he was not sweating or out of breath. Kramer testified that appellant stated, "Some guys were chasing me, so I ran in here to hide." Like Klein, Kramer did not see "[a]ny one of African-American race" in the general area and testified that appellant's physical condition did not indicate that he was being chased. Kramer also testified that the disarrayed condition of the house was consistent with a burglary. Kramer identified appellant in the courtroom as Steve Acosta and he testified that he transported appellant to the police station.[1]

On cross-examination, when asked if in ten minutes (which was, according to police call notes, the approximate time from the time of the 911 call until appellant was in custody) someone could have entered and ransacked the house, checked the dressers, flipped the mattress, put clothes in a bag and put the bag in the kitchen, and removed two televisions, Kramer testified

---

[1] Kramer testified that he also transported Melissa Garibaldi to the police station because "the original caller stated that she may have been involved, acting as a lookout" but she refused to talk and, because Kramer "did not have enough to prosecute her[,]" she was released.

that "[a]ll that stuff that happened, it didn't happen in that ten-minute time frame" and "[i]t would have taken several trips." But in answer to whether the ten-minute time frame on the police call notes was "a good time frame," Kramer testified that the call notes reflect "just the time that the witness, whenever she got home, observed the first strange incident" and that "there was a whole [other] rest of the day before that."

The jury found appellant guilty and the court sentenced appellant to twelve years' imprisonment. This appeal followed. The State did not file a brief in this Court.

### APPLICABLE LAW AND STANDARD OF REVIEW

In reviewing a challenge to the sufficiency of the evidence to support a conviction, we must consider all the evidence and reasonable inferences therefrom in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014). We determine whether inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the jury's verdict. *Goad v. State*, 354 S.W.3d 443, 450 (Tex. Crim. App. 2011).

A person commits burglary of a habitation when the person, without the effective consent of the owner, enters a habitation with intent to commit a theft. TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). Intent is a fact issue for the jury and may be inferred from the circumstances. *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984). It is not necessary for the State to prove a theft was actually committed or the appellant possessed the stolen property. *See Richardson v. State*, 888 S.W.2d 822, 824 (Tex. Crim. App. 1994). Because the entry of the habitation is an intrusion into the occupant's reasonable expectation of privacy, the harm results from the entry. *Id.*

–5–

## ANALYSIS

In his sole issue, appellant argues that the evidence was insufficient to support the conviction because there was no evidence that would give rise to the reasonable inference that appellant had the required intent to commit theft. He does not dispute that he entered the complainant's house. But appellant argues that there was no evidence tying him "to the stolen television(s) or the ransacking of the home or the placing of clothing into a garbage bag." He contends that the "sole factor" tying appellant to the alleged offense was his entry into the house.

The jury heard evidence that appellant entered the complainant's house by pushing through a window air conditioning unit and going through the window, that—upon their entry into the house—police officers observed appellant standing in the living room. The jury also heard evidence that the house was ransacked with "stuff all over the place" with pulled-out drawers, a flipped mattress, items gathered in a garbage bag by the kitchen door, and televisions missing. And the jury heard evidence that appellant compliantly raised his hands upon request by the police and stated that "black guys" had been chasing him, but that officers had not seen any African-American men in the area and appellant appeared calm and not sweating or out of breath. The jury also heard evidence that police officers and a witness had not observed anyone entering or exiting the house from the time of the 911 call to appellant's arrest. Based on this evidence, the jury could reasonably conclude that appellant intended to commit theft. *See Gear v. State*, 340 S.W.3d 743, 747–48 (Tex. Crim. App. 2011) (concluding jury could reasonably infer that appellant intended to commit theft where evidence showed that appellant was interrupted while attempting to enter the complainant's house immediately after breaking the complainant's window, and then ran). Having reviewed the evidence under the appropriate standard, we conclude that it is sufficient to support the jury's verdict. We resolve appellant's sole issue against him.

**CLERICAL ERROR IN JUDGMENT**

The judgment in this case spells appellant's first name "Steva." At the beginning of trial court proceedings, the judge confirmed with appellant that the correct spelling of his first name is "Steve." The notice of appeal also spells appellant's first name "Steve." We have the power to modify a judgment when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the judgment to correct the spelling of appellant's first name to "Steve."

**CONCLUSION**

We affirm the trial court's judgment as modified.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)

131640F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEVE ACOSTA, Appellant

No. 05-13-01640-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1355987-M.
Opinion delivered by Justice Lang-Miers,
Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to correct the spelling of appellant's first name to "Steve."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 7th day of July, 2015.

Print this page

# Case # PD-1080-15

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 09/08/2015 10:27:28 PM |
| Case Number | PD-1080-15 |
| Case Description | |
| Assigned to Judge | |
| Attorney | |
| Firm Name | Law Office Bruce Kaye |
| Filed By | Bruce Kaye |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Bruce Kaye Credit Card |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 11200342 |
| Order # | 006836264-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFile |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Appellant's Petition for Discretionary Review |
| Reference Number | |
| Comments | |
| Status | Rejected |

### Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

### Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 09/14/2015 11:09:27 | The petition for discretionary review does not contain a certification of compliance with T.R.A.P. 9.4(i)(3). The petition for discretionary review does not contain the |

| AM | identity of Judge, Parties and Counsel [Rule 68.4(a)]. You have ten days to tender a corrected petition for discretionary review. |
|---|---|

## Documents

| | | |
|---|---|---|
| *Lead Document* | ACOSTA PDR.pdf | [Original] |
| *Attachments* | Acosta 5th Dist. COA Opinion.pdf | [Original] |